P&P File # N53196

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

=======================================   :
                                          :
**DIANA KIEFFER & ROBERT KIEFFER**        :     **2:10-cv-03938 (SRC)(MAS)**
                                          :
    Plaintiffs                     :
                                          :
          vs.                   :
                                          :
                                          :
**NEW CENTURY FINANCIAL SERVICES, INC**   :
**PRESSLER & PRESSLER, LLP.**             :
                                          :
    Defendants                     :
                                          :
=======================================   :

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## TO DISMISS THE COMPLAINT

---

Dated: January 14, 2011

        By:   *s/Mitchell L. Williamson*

        Mitchell L. Williamson, Esquire
        Pressler and Pressler, L.L.P.
        7 Entin Road
        Parsippany, New Jersey 07054-5020
        (973) 753-5110 /Fax (973) 753-5353
        **Attorneys for Pressler & Pressler, Defendant, Pro Se and**
        **Defendant New Century Financial Services, Inc.**

## TABLE OF CONTENTS

**INTRODUCTION**                                                                                  **1**

**I.      STANDARD OF REVIEW FOR F.R.Civ.P. 12(b)(6) MOTION**                **4**

**II.     DEFENDANTS LEVYS ON THE JOINT BANK ACCOUNT OF**                **6**
**PLAINTFFS WAS PROPER**

     **A      DEFENDANTS ACTED IN ACCORDANCE WITH**                **6**
**THE NEW JERSEY RULES OF COURT WHEN THEY**
**OBTAINED A WRIT OF EXECUTION TO ENFORCE**
**DEFENDANT NCFSI'S JUDGMENT AGAINST PLAINTIFF**
**DIANA KEFFIER A/K/A/ DIANA VERDERANE A/K/A**
**DIANA POTENZONE**

**III.    NO VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES**        **13**
**ACT  CAN OCCUR WHERE THE ALLEGEDLY  IMPROPER**
**ACT WAS SPECIFICALLY AUTHORIZED BY STATUTE.**

**IV.     PLAINTIFFS CLAIMS UNDER THE FAIR DEBT COLLECTION**            **13**
**PRACTICES ACT, 15 U.S.C. § 1692 _et seq_. ("FDCPA") HAVE NO**
**BASIS IN LAW OR IN FACT**

     **A. 15 U.S.C. §1692(d) Harassment or abuse**                        **14**

     **B. 15 U.S.C. §1692(e) False or Misleading representations**        **15**

     **C. 15 U.S.C. §1692(f) Unfair Practices**                            **17**

**V.      THE PLAINTIFFS' STATE CLAIM FOR INTENTIONAL**                  **19**
**INFLICTION OF EMOTIONAL DISTRESS FAILS TO STATE**
**A CLAIM**

**CONCLUSION**                                                                                    **20**

## TABLE OF AUTHORITIES

**Cases**          **Page**

Barrows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347 (D.N.J. 2006)    5

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (U.S. 2007)    5

Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355 (1988)    19

Camero v. Kostos, 253 F. Supp. 331 (D.N.J. 1966)    5

Cohen v. Wolpoff & Abramson, LLP, 2008 U.S. Dist. LEXIS 77052 (D.N.J. 2008)    14

Gil Haskins Auto Leasing, Inc., 18 Ariz. App. 104, 500 P.2d 635 (Div. 1 1972)    1

Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15 (App. Div. 2001)    19

High v. Balun, 943 F.2d 323 (3d Cir. N.J. 1991)    10

In re Warfarin Sodium, 214 F.3d 395 (3d Cir. 2000)    4

Miller v. Payco-General American Credits, Inc., 943 F.2d 482 (4th Cir. 1991)    13

Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337 (App. Div. 1994)    19

Morse v. Lower Merion School District, 132 F.3d 902 (3d Cir. 1997)    4, 19
certif. denied, 135 N.J. 468 (1994

New Brunswick S&L v. Markouski, 123 N.J. 402 (1991)    8

Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380 (3d Cir. 1994)    4, 5

Papasan v. Allain, 478 U.S. 265 (1986)    5

Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,    5
 998 F.2d 1192 (3d Cir. 1993)

Phillips v Messerli & Kramer, P.A., 2009 U.S. Dist. LEXIS 33438 (D. Minn.)    2,11,12

Savig v First National Bank of Omaha, Civil Action No. 09-132    11

Savig v. First Nat'l Bank of Omaha, 2009 U.S. Dist. LEXIS 57593    12

Savig v. First Nat'l Bank of Omaha, 761 N. W. 2d 335, 2010 Minn. LEXIS 190    12

Schillaci v. First Fidelity Bank, 311 N.J. Super. 396 (App.Div.1998) 19

Sylvan Equipment v. Washington & Son, 292 N.J. Super. 568 (Law Div. 1995) 8

Victory v. Manning, 128 F.2d 415 (3d Cir. 1942) 3

Vineland Savings and Loan Association v. Felmey, 12 N.J. Super. 384 (Ch. Div. 1951) 8

Yuhasz v. Poritz, 166 Fed. Appx. 642 (3d Cir.  2006) 5

Wilson v. Quadramed Corp., 225 F.3d 350 (3d Cir. 2000) 13


**Other Sources**

Joint Bank Account as Subject to Attachment, Garnishment, or Execution 3
by Creditor of One Joint Depositor, 86 A.L.R.5th 527, 2a (2010)

M. Minzer, Damages in Tort Actions, vol. I, § 6.12  (1987) 19

Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), 14
reprinted in 1977 U.S.C.C.A.N. 1695


**Rules and Statutes**

F.R.C.P. 12(b)(6) 4,5,19

N.J. Court Rule 4:50-1 11

N.J. Court Rule 4:59:1(g) 7,8

N.J. Court Rule  6:7-1 7

15 U.S.C. §1692a 13

15 U.S.C. §1692(d) 14,15

15 U.S.C. §1692(e) 13,15

15 U.S.C. §1692(f) 17,18

16 U.S.C. §1962 et seq 13

Minn. Stat. § 524.6-203(a) 11

N.J.A.C.  3:1-12.4 (a)                                          9

N.J.S.A. 2A:17-29                                             11

N.J.S.A. 2A:17-57, 63                                          8

N.J.S.A. §17:16I et seq.                                      1,9

N.J.S.A. §17:16I-4.a                                         9,11

N.J.S.A. §17:16I-8                                           8,10

**INTRODUCTION**

"A joint account is like a container, distinct from the money it contains." See <u>Musker v. Gil Haskins Auto Leasing, Inc.,</u> 18 Ariz. App. 104, 500 P.2d 635 (Div. 1 1972)

Plaintiffs, husband and wife have filed the instant matter, a putative class action, claiming that Defendants violate the Fair Debt Collection Practices Act 16 U.S.C. 1962 et seq ("FDCPA") when they cause a levy to be placed on a "joint bank account" also known as a Multiple Party Deposit Account ("MPDA") when only one of the account holders is a judgment debtor. Said accounts are governed by the New Jersey Multiple Party Deposit Account Act (hereinafter "MPDAA") N.J.S.A. §17:161-1 et seq.  Class action Plaintiffs sum up their requested relief: "[E]nsuring Defendants comply with all laws affecting the collection of consumer debts." (Complaint at ¶35)

Specific to the named Plaintiffs, Plaintiff Diana Kieffer (hereinafter the "judgment debtor") maintained two accounts at the Ocean First Bank in Ocean County, New Jersey along with her husband Plaintiff Robert Kieffer. (hereinafter the "husband") (collectively the "Kieffers.") (amended complaint at ¶42) Said accounts were levied on August 17, 2009 by service of a Writ of Execution by the Ocean County Sheriff's Office. Certification of Mitchell L. Williamson, Esq. (hereinafter "MLW Cert.") ¶9, exhibit "H."

The underlying state court matter which led to the judgment and subsequent levies is described more fully in the annexed MLW Cert with exhibits.

Plaintiffs, perhaps relying on the courts discussion in an unreported Minnesota Federal District Court case, <u>Phillips v Messerli & Kramer, P.A.</u>, 2009 U.S. Dist. LEXIS 33438 (D. Minn.  April 2009) (see discussion below) seek to have this court find that the act of levying on a "joint bank account" is a per se violation of the law, despite the fact that there is no support for said proposition in New Jersey. Indeed the New Jersey Multiple Party Deposit Account Act (hereinafter "MPDAA") provides authorization for said levies. Plaintiffs also argue that there is a conflict between the FDCPA and New Jersey law and court rules regarding judgment executions, in this case on a judgment debtors bank account, and that the FDCPA must take precedent. This despite the fact that there is no legal basis to even find that the alleged conflict exists.

Additional claims specific to the Kieffers is that subsequent to the service of the levy Defendants refused to waive the levies in the absence of proofs to establish ownership (between the joint account holders) of the funds in each of the accounts and consequently "forced" the Plaintiffs to present their proofs to allow the court to make a determination. (Complaint at ¶s 55 to 61). The second count of the complaint, state common law claims labeled "Trover/Conversion/Trespass to Chattels"  and the third count for Negligent/Intentional Infliction of Emotional Distress must be dismissed out of hand absence a finding that court rules or procedures were ignored by the Defendants. In Count Three, it would appear that the fact that Defendants required proof to support the Husband's claims of ownership rather than merely accept his naked assertion "is not within the bounds of what is expected in a civilized society." (Complaint at ¶83) Strong words with no rational basis.

As will be discussed below, New Jersey law, as in many other jurisdictions, regarding MPDA'a is that the initial presumption is that the account belongs in equal shares to all account holders.

Most states allow the presumption of ownership to be rebutted, <u>but only by clear and convincing evidence</u>, for fear that depositors might resort to fraud or collusion to avoid paying a debt. A joint account owned by a husband and wife would almost never be garnished by the creditor of the wife, for example, if the couple could simply escape the garnishment by making unsupported assertions that the money belonged to the husband. (emphasis added)

<u>Joint Bank Account as Subject to Attachment, Garnishment, or Execution by Creditor of One Joint Depositor</u>, 86 A.L.R.5th 527, 2a (2010)

Equally bereft of legal basis for any consideration by this court are the claims that Defendants were not prohibited from taking certain auxiliary actions, such as deposing Mrs. Kieffer prior to the levy (the Complaint at paragraph 48) or from instructing the Sheriff to only levy bank accounts solely held by Mrs. Keiffer (the Complaint at ¶49) and therefore the fact that they did not choose to take those steps are evidence of a desire on the part of Defendants to "increase tension, acrimony and hostility between the debtor and non-debtor account holder and result in harassment, oppression or abuse of the debtors." (Complaint at ¶25)

The suggestion that Judgment Debtors be queried about the specifics of their bank accounts prior to the service of any levies can only be made by one extremely naïve or devious. One need merely ask the question: "How long would you leave your money in the bank if you knew your creditors were on their way to take it?" And, specific to the Plaintiff-Debtor, she was asked about bank accounts by way of an Information Subpoena served upon her and in answer to the question: "List the names, addresses and account numbers of all bank accounts on which your name appears" she lied under oath, not once but twice, writing "N/A" the first time and "N/A NONE" the second in response to question number 9. (MLW Cert, ¶¶'s 5 and 6, exhibits "D" and "E" respectively.) The Plaintiff-Debtor also acknowledged under oath in her response to

question number 11 of the Information Subpoena that she did not receive social security benefits or any other exempt funds.

Procedurally, the initial complaint was filed on August 3, 2010 and answers were filed by the Defendants on September 11, 2010. An initial conference was held by the Court on October 28, 2010 at which time it was agreed and an Order was entered to the effect that the Plaintiffs would file an amended complaint, which they did on November 30, 2010 and thereafter Defendants would move to dismiss based on the legal assertions made by the amended complaint.

## 1.        STANDARD OF REVIEW FOR F.R.Civ.P. 12(b)(6) MOTION

A Complaint will be dismissed pursuant to F.R.Civ.P 12(b)(6) if the alleged facts, taken as true, fail to state a claim. F.R.Civ.P.12(b)(6); see In re Warfarin Sodium, 214 F.3d 395, 397-98 (3d Cir. 2000). While the court may accept as true all allegations in the complaint and all reasonable inferences that can be drawn there from, and view them in the light most favorable to the non-moving party, Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 (3d Cir. 1994), it need not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997)

In the instant matter there can be no dispute regarding the facts of the case as to whether there was a levy on the Plaintiffs joint account and what transpired afterwards. Said events are well documented by the bank, the Ocean County Sheriff's Office and the state court.

Regarding the specific allegations of violations of the FDCPA, (see Complaint at ¶¶'s 26-28) and the First Count of the Complaint, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Papasan v. Allain, 478 U.S. 265, 286, (1986), Bell Atl. Corp. v. Twombly, 550 U.S. 544 (U.S. 2007).

In reviewing the instant motion this "court may examine the facts as alleged in the pleadings as well as "matters of public record, orders, exhibits attached to the complaint, and items appearing in the record of the case." See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384, 1385 n.2 (3d Cir. 1994) (citations omitted). Cited in Yuhasz v. Poritz, 166 Fed. Appx. 642, 646-647 (3d Cir. N.J. 2006).  It has long been the rule that the Court may consider matters outside the pleadings when deciding a 12(b)(6) Motion to Dismiss whenever an issue evolves preliminarily touching upon the legal prerequisites to the maintenance of a cause of action. Victory v. Manning, 128 F.2d 415 (3d Cir. 1942); Camero v. Kostos, 253 F. Supp. 331, 338 (D.N.J. 1966). The court may also consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993).  Cited in Barrows v. Chase Manhattan Mortg. Corp., 465 F. Supp. 2d 347, 355 (D.N.J. 2006)

In the instant matter those facts and exhibits concerning the Ocean County matter are detailed and attached in the annexed Certification of Mitchell L. Williamson, Esq. with annexed exhibits.

Lastly, it would appear there are no facts in dispute that can be raised by the Plaintiff, given that the debt itself and the entry of judgment may not be disputed in this forum. The only issue here is whether the Plaintiff has a basis in law for his claims.

## II.    DEFENDANTS LEVYS ON THE JOINT BANK ACCOUNT OF PLAINTFFS WAS PROPER

### A    DEFENDANTS ACTED IN ACCORDANCE WITH THE NEW JERSEY RULES OF COURT WHEN THEY OBTAINED A WRIT OF EXECUTION TO ENFORCE DEFENDANT NCFSI'S JUDGMENT AGAINST PLAINTIFF DIANA KEFFIER A/K/A/ DIANA VERDERANE A/K/A DIANA POTENZONE

On July 10, 2007 the Superior Court of New Jersey issued a Writ of Execution against the judgment debtor in favor of Defendant NCFSI. (MLW Cert, ¶3, Exhibit "A.") The Writ was thereafter sent to the Ocean County Sheriff's Office ("OCSO") for service on the Ocean First Bank. After service of the Writ, the OCSO was advised that there were "no accounts found." (MLW Cert, ¶4, Exhibit "C.") A second Writ of Execution was issued on July 22, 2009 and thereafter sent to the OCSO  for a 2nd attempt to levy on bank accounts in the Plaintiff's name at the Ocean First Bank. (MLW Cert, ¶8, Exhibits "F" and "G.")

On August 17, 2009 the Writ was served and a levy was placed and $2,359.23 was frozen in an account bearing the Plaintiff-Debtor's name. (MLW Cert, ¶8, Exhibit "H.")  On August 18, 2009, Plaintiff was sent notification of the levy by the Office of the Ocean County Sheriff. (MLW Cert, ¶10, Exhibit "I.")  Two days later, on August 19, 2009, the Sheriff's office received correspondence from the bank that a second account bearing Plaintiff's name was located and a second amount of $6849.69. On that same day the bank also notified the Plaintiffs of the two levies. (MLW Cert, ¶11, Exhibit "J" and K.")

Of note are two facts:  The first that the Plaintiff-Debtor has previously stated under oath in her responses to the Information Subpoena served upon her that she had no bank accounts in her name. (MLW Cert, ¶5, Exhibit "D.") However the truth was that she had opened the two accounts which were levied several years prior the date she responded to the Information Subpoena. (MLW Cert, ¶32, Exhibit "S.")

The second fact is that the August 19, 2009 letter from Ocean First to the OCSO did not identify the levied accounts as joint accounts. (MLW Cert, ¶11, Exhibit "J.")

As discussed above, Defendant NCFSI obtained a judgment against the Plaintiff-Debtor. Based on that judgment Defendant NCFSI, through its attorneys Defendant Pressler, was entitled to seek to enforce that judgment via a Writ of Execution against the judgment debtor's goods and chattels. The procedure for obtaining said Writ is detailed in the Rules Governing the Courts of the State of New Jersey at the time of the underlying matter stating in pertinent part:.

R. 6:7-1 Requests for Issuance of Writs of Execution; Notice to Debtor; Claim for Exemption…:

> (a) Requests for Issuance; Intention to Return. All requests for issuance of writs of execution and other process for the enforcement of judgments shall be made in writing to the clerk at the principal location of the court. A request for the issuance of a writ of execution against goods and chattels shall be accompanied by a statement of the amount due.

> (b) Notice to Debtor. The provisions of R. 4:59:1(g) respecting notice to debtor, exemption claims and deferment of turnover and sales of assets shall apply to all writs of execution issued by the Law Division, Special Civil Part. The notice to debtor shall be in the form prescribed by Appendix VI to these rules.

<u>PRESSLER, Current N.J. COURT RULES</u>, at 2224-5 (GANN) 2010, Amendments to September 2009.

R. 4:59:1(g) Notice to Debtor

> (g) Every court officer or other person levying on a debtor's property shall, on the day the levy is made, mail a notice to the last known address of the person or business entity whose assets are to be levied on stating that a levy has been made and describing exemptions from levy and how such exemptions may be claimed by qualified persons. The notice shall be in the form prescribed by Appendix VI to these rules and copies thereof shall be promptly filed by the levying officer with the clerk of the court and mailed to the person who requested the levy. If the clerk or the court receives a claim of exemption, whether formal or informal, it shall hold a hearing thereon within 7 days after the claim is made. If an exemption claim is made to the levying officer, it shall be forthwith forwarded to the clerk of the court and no further action shall be taken with respect to the levy pending the outcome of the exemption hearing. **No turnover of funds or sale of assets may be made, in any case, until 20 days after the date of the levy and the court has received a copy of the properly completed notice to debtor**. (Emphasis added)

<u>PRESSLER, Current N.J. COURT RULES</u>, at 1766 (GANN) 2010, Amendments to September 2009.

The Plaintiffs' bank accounts were levied upon on August 17, 2009.  The amount levied upon was $6849.69.   The Plaintiff-Debtor sought by motion to have the levy released and was successful.


Defendants were well within their right to levy on the accounts.  NCFSI had a constitutionally protected property right in the form of a judicial lien upon the bank account in the name of the judgment debtor in the underlying action.  See <u>Sylvan Equipment v. Washington & Son</u>, 292 <u>N.J.</u> <u>Super.</u> 568 (Law Div. 1995); <u>New Brunswick S&L v. Markouski</u>, 123 <u>N.J.</u> 402 (1991); and <u>Vineland Savings and Loan Association v. Felmey</u>, 12 <u>N.J. Super</u>. 384, 393-94 (Ch. Div. 1951). Said levy was proper under <u>N.J.S.A.</u> 2A:17-57, 63 and <u>N.J.S.A.</u> 17:16I-8 <u>et</u> <u>seq</u>.

The accounts in question were opened in by the Plaintiff-Debtor and her husband on February 18, 2005. When the Plaintiffs opened those account they agree to be bound subject to the <u>New Jersey Multi-Party Deposit Account Act</u>, N.J.S.A. §17-161 et seq. which governs such accounts.

> "The following information must be included in all multiple party account contracts:
>     1. A statement that the account is subject to the provisions of the Multiple Party Deposit Account Act, N.J.S.A. 17:16I-1 et seq.

N.J.A.C.  3:1-12.4 (a)

N.J.S.A. § 17:16I-4. Ownership during lifetime states in relevant part:

> Unless a contrary intent is manifested by the terms of the contract, or the deposit agreement, or there is other clear and convincing evidence of a different intent at the time the account is created:
>
>     a.    A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal.

N.J.S.A. §17:16I-8 states in relevant part:

> The following payments from a multiple-party account by the financial institution, including payment of the entire account balance, are deemed authorized by all parties to, and any other person with an interest in, the multiple-party account, without any duty on the part of the financial institution to consider the net contributions of the parties to the account.
>
> b. Payments pursuant to any statutory or common law right of set off, levy, attachment or other valid legal process or court order, relating to the interest of any one or more of the parties; and …

This section of the act specifically considers the circumstances beyond the instant matter as they deal with the payment on the account.  This section imputes authorization for payment pursuant to a levy or court order, to all parties with an interest in funds on deposit in an account governed by the MPDAA without regard for the net contributions of the parties.

On the facts of the present case, the Plaintiffs both expressly consented at the time they opened the account to the potential of a court order for levy or turnover as to their joint accounts. <u>High v. Balun</u>, 943 F.2d 323, 325-326 (3d Cir. N.J. 1991). Based on the fact that the Providian Bank account which formed the basis of the judgment which led to the levies in question defaulted in 2002, (MLW Cert at ¶1) Plaintiffs knew or should have known that subsequent litigation was a real possibility and

The levies at issue were valid legal process allowed by the statute. At all times relevant to the case at bar, the Defendants acted in full compliance with the law and the monies, absent proof of ownership or exemption could have been released to the judgment creditor by the bank in compliance with N.J.S.A. §17:16I-8.

N.J.S.A. §17:16I-8 applies to protect creditors. This interpretation of the MPDAA is reinforced by an examination of the legislative intent of the statute. (MLW Cert at ¶33 Exhibit "U.") N.J.S.A. §17:16I-8 was amended by L.1995, c.372; section 1, which states: "This bill clarifies the rights of the parties to a multiple-party financial institution account <u>by permitting payment of the entire account balance to judgment creditors</u> (subsection b.) and trustees in bankruptcy of any party to the account (subsection c.)" (underlining added) The Legislature of the State of New Jersey recognized the complications creditors faced with execution on joint bank accounts and took deliberate action to clarify the rights of parties with respect to same and to protect against claims raised by non-debtors account holders that the levy and/or turnover and itself to be a violation of law.

10

Does this leave an aggrieved account holder without remedy – no.  Such non-debtor account

holder could oppose the turnover or independently move to quash the levy.   Such non-debtor

account holder could also file an independent summary action under N.J.S.A. 2A:17-29 or, if no

notice is claimed and the monies had already been turned over to the judgment creditor, move to

vacate the turnover order by R. 4:50-1 motion.

What may also prove instructive to the court is how the question of levying on multiparty

accounts when only one account holder is a judgment debtor was handled in multiple matters in

the United States Federal Court for the District of Minnesota. [1]  Despite diligent research by

---

[1]   *Phillips v Messerli & Kramer, P.A.,* 2009 U.S. Dist. LEXIS 33438 (D. Minn.  April 2009)
*where the court denied the law firm defendant's notice of motion to certify four questions of law
to the Minnesota Supreme Court after previously denying their motion to dismiss. In Phillips the
defendants had obtained a judgment against the wife and thereafter levied on joint checking and
savings accounts held in both the judgment-debtor and her husband's names.  The allegation
was that a levy on a joint account constituted a violation of the Minnesota Multi-Party Accounts
Act, ("MPAA") Minn. Stat. § 524.6-203(a) which states in pertinent part:*

> *A joint account belongs, during the lifetime of all parties, to the parties in proportion to
> the net contributions by each to the sums on deposit, unless there is clear and
> convincing evidence of a different intent.*

*Said language mirrors New Jersey's statue, N.J.S.A. §17:16I-4(a)) One of the factual allegations
was that the Defendants "did not obtain assurances from the Plaintiffs that the levied funds were
not part of a joint account prior to serving the third-party levy." Phillips Complaint at ¶16.  The
Phillips court disapproved a "take now, ask questions later" approach to levies on multiparty
accounts and found that the Minnesota MPAA did not permit attaching funds first and then
forcing the non-debtor to prove his or her own interest in the funds. Id. at 15-16.  Said finding
supports the instant Plaintiffs position.*

*In Savig v First National Bank of Omaha, Civil Action No. 09-132  District of Minnesota, the
same Plaintiffs attorney from the Phillips case, supra, filed another suit against Messerli &*

counsel, no other cases outside Minnesota were found discussing the propriety of the actual levy/attachment of a joint account. All other cases focus on the issue of how much of an account gets turned over to the judgment creditor and what proofs are necessary to establish actual ownership of the funds within the account.

There is no claim under the MDPAA with which to bootstrap a claim under the FDCPA on the

---

Kramer with the similar fact pattern of a levy on a multi party account. The Savig court declined to follow the Phillips court's decision "in support of their contention that a creditor may not serve a garnishment summons on a joint account where not all of the account holders are debtors. Savig v. First Nat'l Bank of Omaha, 2009 U.S. Dist. LEXIS 57593 at 13 (D. Minn., July 6, 2009) The Savig case was thereafter sent to the Minnesota Supreme Court to answer the question:

> May a judgment creditor serve a garnishment summons on a joint account to satisfy the debt of an account holder when not all of the account holders are judgment debtors, and if so, (1) is it the judgment creditor or the account holders who bear the burden of establishing net contributions to the account during the garnishment proceeding?

Savig, Id. at 35

The Minnesota Supreme Courts responed to those inquiries stating:

> [W]e answer the first certified question in the affirmative:  a judgment creditor may serve a garnishment summons on a garnishee, attaching funds in a joint account to satisfy the debt of an account holder, even though not all of the account holders are judgment debtors.

Savig v. First Nat'l Bank of Omaha, 761 N. W. 2d 335, 341, 2010 Minn. LEXIS 190, 16 (2010)

> "We conclude that the burden of establishing net contributions to a joint account in a garnishment proceeding should be on the account holders."

Id. at 342, and LEXIS 20.

12

basis of an allegation of abusive collection practice.

## III.   NO VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT  CAN OCCUR WHERE THE ALLEGEDLY  IMPROPER ACT WAS SPECIFICALLY AUTHORIZED BY STATUTE.

The Fair Debt Collection Practices Act (hereinafter "FDCPA") prohibits abusive or unfair collection practices by debt collectors.  As has been discussed at length above, Defendants were well within their right in not releasing either levy.   They were entitled to the dignity of due process before they could be compelled to release same under Plaintiffs claim of ownership. Moreover, had Defendant, Pressler and Pressler, released same when requested without any proofs they would have been giving away their client's property in violation of their ethical obligation to represent their client's best interest.  Plaintiffs took no action to provide any proofs to establish the interests in said account until days before the Court hearing in the underlying action before the turnover.

## IV.   PLAINTIFFS CLAIMS UNDER THE FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692 *et seq*. ("FDCPA") HAVE NO BASIS IN LAW OR IN FACT

Congress enacted the FDCPA "to eliminate abusive debt collection practices which contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." Wilson v. Quadramed Corp., 225 F.3d 350, 354 (3d Cir. 2000) (quoting Miller v. Payco-General American Credits, Inc., 943 F.2d 482, 483-84 (4th Cir. 1991) (in turn quoting 15 U.S.C. §§ 1692a and 1692e)).

> It is the purpose of this title to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.

15 U.S.C. § 1692(e).

Congress defined "debt collection abuses" as follows:

> Collection abuse takes many forms, including obscene or profane language, threats of violence, telephone calls at unreasonable hours, misrepresentation of a consumer's legal rights, disclosing a consumer's personal affairs to friends, neighbors, or an employer, obtaining information about a consumer through false pretense, impersonating public officials and attorneys, and simulating legal process.

Sen. Rep. No. 382, 95th Cong., 1st Sess. 2 (1977), reprinted in 1977 U.S.C.C.A.N. 1695, 1696. cited in <u>Cohen v. Wolpoff & Abramson, LLP</u>, 2008 U.S. Dist. LEXIS 77052 (D.N.J. 2008)

Based on a review of those sections of the Act cited in the complaint it becomes clear that the allegations have no legal merit. There is a difference between abuse and discomfort. Clearly it must be uncomfortable for a debtor to know that there is someone out there (a creditor) who can garnish their wages or attach their bank account. If nothing else it takes a measure of control over ones finances. However that feeling that a debtor gets is a natural consequence of not paying bills when due or resolving disputes in a timely fashion. If the various elected bodies wanted people to simply pay their debts when and if they chose to they would not have regulated the debt collection industry, they would have simply  banned it.

### A.  <u>15 U.S.C. §1692(d) Harassment or abuse</u>

In paragraph 26 of the complaint Plaintiffs alleges that there was a violation of 15 U.S.C. §1692(d) because "imposing a levy on a person's money in connection with a debt held solely by somebody else is to harass and abuse them both." As discussed above, there is no prohibition against a judgment creditor placing a levy on a joint account. In reality, an individual who keeps an account with a judgment debtor has only the judgment debtor (for failing to satisfy the judgment or the account holder him or herself for not opening up a new individual account upon

entry of the judgment so as not to intertwine their assets with a judgment debtor and become intertwined in the interplay between the judgment debtor and his or her creditors.

15 U.S.C. §1692(d) Harassment or abuse states:

> A debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1) The use or threat of use of violence or other criminal means to harm the physical person, reputation, or property of any person.
> (2) The use of obscene or profane language or language the natural consequence of which is to abuse the hearer or reader.
> (3) The publication of a list of consumers who allegedly refuse to pay debts, except to a consumer reporting agency or to persons meeting the requirements of section 603(f) or 604(3) of this Act.
> (4) The advertisement for sale of any debt to coerce payment of the debt.
> (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (6) Except as provided in section 804, the placement of telephone calls without meaningful disclosure of the caller's identity.

### B. 15 U.S.C. §1692(e) False or Misleading representations

In paragraph 27 of the complaint Plaintiffs alleges that there was a violation of 15 U.S.C. §1692(e) "because instructing a levying authority to levying all accounts held by a particular person without any limitation on jointly held accounts that contain money owned by an innocent third party involves a false, deceptive, and/or misleading representation in connection with collection of the debt."

15 U.S.C. §1692(e) states:

> A debt collector may not use any false, deceptive, or misleading representation or

15

means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section.

(1) The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State, including the use of any badge, uniform, or facsimile thereof.

(2) The false representation of—

    (A) the character, amount, or legal status of any debt; or

    (B) any services rendered or compensation which may be lawfully received by any debt collector for the collection of a debt.

(3) The false representation or implication that any individual is an attorney or that any communication is from an attorney.

(4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.

(5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

(6) The false representation or implication that a sale, referral, or other transfer of any interest in a debt shall cause the consumer to—

(A) lose any claim or defense to payment of the debt; or

(B) become subject to any practice prohibited by this title.

(7) The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer.

(8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

(9) The use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued, or approved by any court, official, or agency of the United States or any State, or which creates a false impression as to its source, authorization, or approval.

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

(11) The failure to disclose in the initial written communication with the consumer and, in addition, if the initial communication with the consumer is oral, in that initial oral communication, that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, and the failure to disclose in subsequent communications that the communication is from a debt collector, except that this paragraph shall not apply to a formal pleading

made in connection with a legal action.

(12) The false representation or implication that accounts have been turned over to innocent purchasers for value.

(13) The false representation or implication that documents are legal process.

(14) The use of any business, company, or organization name other than the true name of the debt collector's business, company, or organization.

(15) The false representation or implication that documents are not legal process forms or do not require action by the consumer.

(16) The false representation or implication that a debt collector operates or is employed by a consumer reporting agency as defined by section 603(f) of this Act.

So which of the sixteen enumerated situations do the Plaintiffs claim is related to them?  There were no false representations. What the Plaintiffs object to is the fact that their representations were not accepted at face value and that they were put to their proofs regarding whose money was in the account. What the Plaintiffs argument fails to address is what happens when all the money in a joint account is the debtors. Does that change the ability to levy on a joint account without warning. And warning is the real issue here. Under Plaintiffs' theory bank levies should be done without warning on joint accounts. As a debtor then all you have to do to protect your assets is to move them to a joint account when the complaint is filed. If and when a judgment gets entered you will get a notice of the intent to levy on the joint account and will therefore have a chance to remove the funds before the levy gets to the bank.  Plaintiff's fail to offer a legal basis which supports or promotes this scenario.


### C.  15 U.S.C. §1692(f) Unfair Practices

In paragraph 28 of the complaint Plaintiffs alleges that there was a violation of 15 U.S.C. §1692(f) 1692fbecause it is unfair and unconscionable to attempt to impose a levy on a person's money in connection with a debt held solely by somebody else."

A levy does not give the judgment creditor possession of the funds. As discussed above the law is very clear that only a court can give the judgment creditor the funds and then, only after any interested parties can raise any objections they may have. A levy is on the account, it is up to the parties to establish the ownership of the funds.

15 U.S.C. §1692(f) Unfair Practices states:

> A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.
>
> (2) The acceptance by a debt collector from any person of a check or other payment instrument postdated by more than five days unless such person is notified in writing of the debt collector's intent to deposit such check or instrument not more than ten nor less than three business days prior to such deposit.
>
> (3) The solicitation by a debt collector of any postdated check or other postdated payment instrument for the purpose of threatening or instituting criminal prosecution.
>
> (4) Depositing or threatening to deposit any postdated check or other postdated payment instrument prior to the date on such check or instrument.
>
> (5) Causing charges to be made to any person for communications by concealment of the true propose of the communication. Such charges include, but are not limited to, collect telephone calls and telegram fees.
>
> (6) Taking or threatening to take any nonjudicial action to effect dispossession or disablement of property if—
>
> (A) there is no present right to possession of the property claimed as collateral through an enforceable security interest;
>
> (B) there is no present intention to take possession of the property; or
>
> (C) the property is exempt by law from such dispossession or disablement.
>
> (7) Communicating with a consumer regarding a debt by post card.
>
> (8) Using any language or symbol, other than the debt collector's address, on any envelope when communicating with a consumer by use of the mails or by telegram, except that a debt collector may use his business name if such name does not indicate that he is in the debt collection business.

## V.    THE PLAINTIFFS' STATE CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS FAILS TO STATE A CLAIM

Plaintiffs' claim for relief for "Intentional Infliction of Emotional Distress" fails to meet the legal threshold and must be dismissed. No factual basis for the claim is offered, only "unsupported conclusions, unwarranted inferences, and sweeping legal conclusions" which are unacceptable to stave off a F.R.C.P. 12(b)(6) motion to dismiss. See Morse v. Lower Merion School District, 132 F.3d 902, 906 n.8 (3d Cir. 1997)

> Generally speaking, to establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. M. Minzer, Damages in Tort Actions, vol. I, § 6.12 at 6-22 (1987) (Minzer).  Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Id. at 6-27.
>
> Second, the defendant's conduct must be extreme and outrageous. (citations omitted) The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement, supra, § 46 comment d.

Buckley v. Trenton Sav. Fund Soc., 111 N.J. 355, 366-367 (1988) (emphasis added)

The tort of intentional infliction of emotional distress requires more than humiliation or embarrassment. In Morgan v. Union County Bd. of Chosen Freeholders, 268 N.J. Super. 337, 354 (App. Div. 1994), certif. denied, 135 N.J. 468 (1994), the court "concluded that plaintiff's 'allegations relating to aggravation, embarrassment, minor headaches and loss of sleep' were not 'sufficiently severe' to support an intentional infliction of emotional distress claim. See also Schillaci v. First Fidelity Bank, 311 N.J. Super. 396, 406-07, (App.Div.1998). Cited in Griffin v. Tops Appliance City, Inc., 337 N.J. Super. 15, 26 (App. Div. 2001)

Plaintiffs have not alleged that Defendants sought to achieve anything other than to levy on a judgment debtors bank account(s). While the non-debtor account holder may have been inconvenienced by said action, it could have been easily avoided had the Plaintiff-Debtor and her husband maintained separate accounts or taken other actions to mitigate the inconvenience.

If the non-debtor account holder claims that he was unaware of his wife's judgments he must look in her direction for withholding said information and not advising him. Additionally the fact that the matter took as long as it did to resolve is as much a consequence of the Plaintiff-Debtor's failure to follow the clear directions she was sent at the time of levy:

> If the levy is against a bank account, the bank has already been notified to place a hold on your account. However, the funds will not be taken from your account until the Court so orders. You may claim your exemption by notifying the clerk of the court and the person who ordered. this levy of your reasons why your property is exempt. This claim must be in writing and if it is not mailed within 10 days of services of this notice, your property is subject to further proceedings for execution. The address of the Court is OCEAN, CLERK OF THE SUPERIOR COURT, OCEAN COUNTY COURT HOUSE 118 WASHINGTON STREET, ROOM 121, TOMS RIVER, NJ, 08754

MLW Cert at ¶10, Exhibit I

**CONCLUSION**

Plaintiffs are unable to establish a legal basis for their claims and therefore Defendants are entitled to a dismissal of the instant action.

Respectfully submitted

January 14, 2011

By:   *s/Mitchell L. Williamson*
Mitchell L. Williamson, Esquire
**Attorneys for Defendants**

20