**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| DIANA KIEFFER & ROBERT KIEFFER, : | |
| : | |
| Plaintiffs, : | |
| : | Civil Action No. 10-3938 (SRC) |
| v. : | |
| : | OPINION |
| NEW CENTURY FINANCIAL SERVICES, : | |
| INC. and PRESSLER & PRESSLER, LLP, : | |
| : | |
| Defendants. : | |
| : | |

**CHESLER**, District Judge

This matter comes before the Court on the parties' cross-motions for summary judgment [docket entries 53 & 54]. The motions have been fully briefed, and the Court proceeds to rule on the motions without oral argument, pursuant to Federal Rule of Civil Procedure 78. It has considered the papers filed by the parties, and for the reasons discussed below, will grant Defendant's summary judgment motion in part and accordingly deny Plaintiffs' motion for summary judgment in part.

**I.    BACKGROUND**

This putative class action, which arises under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, et seq., challenges the practice of levying upon a bank account to collect a debt where the account is held jointly by the subject debtor and at least one non-debtor. The Court recites the basic facts relating to this action.

Plaintiffs Diana Kieffer and Robert Kieffer are married. At all relevant times, they jointly maintained two accounts at the Ocean First Bank in Ocean County, New Jersey. On May 9, 2007, a default judgment in the amount of $6,051.12, plus post-judgment interest, had been entered in the Superior Court of New Jersey against Diana Kieffer (hereinafter, "Mrs. Kieffer" or the "Plaintiff-Debtor") in a debt collection action filed by New Century Financial Services, Inc. ("New Century"). The Court will refer to that action, captioned <u>New Century Financial Services, Inc. v. Diana L. Verderame a/k/a Diana Potenzone</u>, simply as the "debt collection action."[1] In the debt collection action, New Century sought to recover Mrs. Kieffer's delinquent credit card debt, which New Century had acquired from the original creditor, Providian Bank. Shortly after obtaining the judgment, New Century, through its counsel, Pressler & Pressler ("Pressler"), filed a writ of execution but was unsuccessful in attempts to levy upon Plaintiff-Debtor's real and personal property. Pressler served Mrs. Kieffer with an information subpoena, which, among other things, requested disclosure of all bank accounts on which Plaintiff-Debtor's name appears. Mrs. Kieffer's response to that request was "N/A" and "NONE." On July 22, 2009, a second writ of execution (the "Second Writ") was filed.

The Second Writ was sent to the Ocean County Sheriff's Office ("OCSO") for service. Pressler instructed the OCSO to levy upon any and all of Plaintiff-Debtor's accounts at Ocean First Bank. Although Plaintiff-Debtor had not disclosed any such accounts in her responses to post-judgment discovery, Pressler had learned of one account through payments Mrs. Kieffer made on other collection matters handled by the Pressler office. On August 17, 2009, the Second

---

[1] It is not disputed that the defendant named in the debt collection action is Diana Kieffer. The other surnames used to identify her reflect her name before her marriage to Robert Kieffer.

2

Writ was served on the Ocean First Bank and a levy was placed on accounts bearing Plaintiff-Debtor's name. The bank froze $2,359.23 in an account Plaintiff-Debtor held jointly with her husband, Robert Kieffer ("Mr. Kieffer" or "Plaintiff-Husband"). On that same day, the OCSO mailed Plaintiff-Debtor a notice, as required by New Jersey Court Rules, notifying her that a specific account, identified by number "&/OR ANY & ALL OTHER in an amount not to exceed $6,848.69 at the OCEAN FIRST (TOMS RIVER - RT 70) has been levied upon" to satisfy the judgment in the debt collection action. (Williamson Cert., Ex. I.) Two days later, on August 19, 2009, Ocean First identified a second account bearing Plaintiff-Debtor's name and froze $4,490.46 in this second bank account pursuant to the Writ of Execution which had been served on August 17, 2009. This account was also held jointly by Diana and Robert Kieffer. By letter dated August 19, 2009, Ocean First Bank notified Plaintiff-Debtor that two accounts, identified by number in the letter, had been levied upon, in the amount of $6,848.69,[2] plus a bank levy fee.

Mrs. Kieffer called Pressler at 11:51 a.m. on August 19, 2009 to discuss her other two active collection matters. During that call, she broached the subject of the collection matter related to the debt collection action. She agreed to make voluntary payments towards the debt collection action account, and Pressler accordingly prepared a letter addressed to the OCSO asking that all future executions be held in abeyance. Plaintiff-Debtor placed a second call to Pressler minutes later, at approximately 12:24 p.m, in which she advised that the Sheriff had just visited her house and informed her that a bank levy in the amount of $2,368.23 was placed on her account. The Court notes that Plaintiff-Debtor does not maintain that, during this visit, the

---

[2] The Court notes a discrepancy of one dollar in the letter's statement regarding the total amount of funds frozen and various other documentation in the record. The other documents indicate a total levied amount of $6,849.69.

3

Sheriff served her with any documentation giving written notice of the levy, and the OCSO records show that notice to Plaintiff-Debtor of the levy was served by mail.  The Court further notes that this version of how and when Plaintiff-Debtor learned of the levy conflicts with her deposition testimony, in which Plaintiff-Debtor stated under oath that she had been informed of the levy by the Ocean First bank manager on August 18, 2009, when she went to the bank in person.  During the 12:24 phone call to Pressler, Plaintiff-Debtor asked that the bank levy be released because she needed the money to pay her mortgage.  She was advised that the levy would be released to the extent a payment was made toward the debt collection action judgment.  At approximately 12:37 p.m., Mrs. Kieffer placed a third phone call to Pressler, now stating that the amount levied was actually $6,848.69.  She asserts that she asked the levy to be lifted because she and Pressler had made payment arrangements but that Pressler refused.  Finally, in a fourth telephone call initiated by Plaintiff, Plaintiff-Debtor requested copies of the letters Pressler had sent to the OCSO.

Following these various telephone conversations occurring over the course of roughly an hour and a half on August 19, 2009, Pressler sent a letter to Plaintiff-Debtor memorializing their payment plan agreement.  The August 19, 2009 letter states:

> Confirming telephone conversation of 08/19/09, this office will expect $30.00 by 09/15/09 and $30.00 on the 15th of every month thereafter.  The above [default judgment] balance will be reduced by the amount of the bank levy once the funds have been turned over to the Plaintiff's attorney.

(Williamson Cert. at Ex. O; D. Kieffer Cert. at Ex. 6.)  The next day, on August 20, 2009, Pressler was advised by the OCSO that Ocean First Bank had frozen a second bank account bearing Plaintiff-Debtor's name as account holder, as set forth above.  It was also on August 20,

4

2009 that Mr. Kieffer advised Pressler that it was his view that the levied funds belonged to him, not to Plaintiff-Debtor, and that they needed to be released so he could make his mortgage payments.

Thereafter, Plaintiffs and Pressler engaged in various communications in an attempt to reach an agreement as to the release and turnover of the funds.  According to Pressler, Pressler and Mr. Kieffer orally agreed during a September 16, 2009 phone call that $1,000 of the levied funds would be released, pursuant to the applicable statutory exemption from levy, and the balance would be turned over to Pressler by consent.  Plaintiffs did not, however, sign the proposed consent order sent by Pressler.  Instead, on September 18, 2009, Plaintiff-Debtor, acting pro se, submitted a motion in the New Jersey Superior Court, Special Civil Part of Mercer County, which was filed by the clerk as a motion to vacate the default judgment but appears actually to have been an attempt by Plaintiffs to object to the levy.   A few weeks later, after Plaintiffs had secured counsel, they filed a motion to release the levy, supported by documentation regarding the source and ownership of the funds in the frozen bank accounts.  On October 23, 2009 the Superior Court directed that the levied funds be released in their entirety, as exempt and as belonging solely to Mr. Kieffer.

Plaintiffs thereafter filed this action in federal court on August 3, 2010.  In addition to the cause of action under the FDCPA, 15 U.S.C. § 1692, the First Amended Complaint ("Complaint") also asserted common law claims for conversion, intentional infliction of emotion distress and negligent infliction of emotional distress.  Upon Defendants' Rule 12(b)(6) motion, the Court dismissed Plaintiffs' intentional infliction of emotional distress claim.  Plaintiffs have expressed their desire not to pursue their claim for negligent infliction of emotional distress.

## II. DISCUSSION

### A. Legal Standard

The standard upon which a court must evaluate a summary judgment motion is well-established. Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Kreschollek v. S. Stevedoring Co., 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See Boyle v. County of Allegheny Pennsylvania, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

In this case, both Plaintiffs and Defendants have moved for summary judgment. The showing required of Plaintiffs and Defendants to establish that there is no genuine issue of material fact differs based on which party bears the burden of proof at trial. Plaintiffs bear that burden on the claims which remain active in this case. Thus, for Plaintiffs to obtain summary judgment on their claims, they must show that, on all the essential elements of the case on which they bear the burden of proof at trial, no reasonable jury could find for Defendants. In re Bressman, 327 F.3d 229, 238 (3d Cir. 2003). In contrast, to prevail on their motion for summary judgment, Defendants must point out to the district court "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.

Once the moving party has properly supported that there is no triable issue of fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248; see also Fed.R.Civ.P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." Gleason v. Norwest Mortg., Inc., 243 F.3d 130, 138 (3d Cir. 2001). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Katz v. Aetna Cas. & Sur. Co., 972 F.2d 53, 55 (3d Cir. 1992) (quoting Celotex, 477 U.S. at 322-23).

### B.     FDCPA Claim

Plaintiffs do not dispute the validity of the debt upon which the debt collection activity of Defendant Pressler, on behalf of its client, Defendant New Century, is based. They concede that Mrs. Kieffer is a judgment debtor by virtue of the default judgment entered against her in the debt collection action and that New Century is the judgment creditor. Plaintiffs further clarify

that this lawsuit does not challenge the general legality of levying against bank accounts held jointly by a debtor and a non-debtor.[3]

The gravamen of the Complaint is that Pressler violated the FDCPA by causing a levy to be placed upon the Ocean First Bank accounts jointly held by Diana and Robert Kieffer, the debtor and non-debtor, respectively, without regard to whether the funds contained therein in fact belonged to the debtor. Underlying this theory of wrongdoing is the manner in which ownership of joint accounts is determined under New Jersey law. The New Jersey Multiple Party Deposit Account Act ("NJMPDAA"), N.J.S.A. § 17:16I-1, et seq., which governs "multiple party deposit accounts" ("MPDAs"), including joint bank accounts, provides in relevant part:

> Unless a contrary intent is manifested by the terms of the contract, or the deposit agreement, or there is other clear and convincing evidence of a different intent at the time the account is created:
>
> a. A joint account belongs, during the lifetime of all parties, to the parties in proportion to the net contributions by each to the sums on deposit. In the absence of proof of net contributions, the account belongs in equal shares to all parties having present right of withdrawal.

N.J.S.A. § 17:16I-4a. In other words, by statute, Plaintiff-Debtor owned only the share of each joint account as determined by her net contributions proportionate to the amount on deposit in the account. The statute further provides that there is a rebuttable presumption that each account

---

[3] The Court notes that a reasonable reading of the Complaint may lead to the understanding that the Complaint does, in fact, allege that levying against joint accounts should be prohibited under the FDCPA. Plaintiffs allege that the levy on the joint accounts was wrong because the law did not prevent "Defendants from instructing the Sheriff to only levy bank accounts solely held by Mrs. Kieffer." (Compl., ¶ 49.) They also allege as follows: "Nothing in New Jersey's statutes or court rules prevents Defendants from instructing levying authorities to only levy bank accounts solely held by the debtor or to refrain from levying jointly held bank accounts." (Id., ¶ 15.) Nevertheless, Plaintiffs' briefing on these cross-motions makes it clear that their FDCPA claim is not based on the theory that levying joint bank accounts is wrong in and of itself.

holder owns an equal share of the funds, which in Plaintiff-Debtor's case would be 50% of each joint account she held at Ocean First Bank with Mr. Kieffer.

The Complaint alleges that rather than "deposing Mrs. Kieffer to ascertain whether and to what extent money in Mrs. Kieffer's joint bank accounts was actually Mrs. Kieffer's money," Defendants instructed the Sheriff to levy all of Mrs. Kieffer's accounts. (Compl., ¶ 50.) As a result, Plaintiffs maintain, Defendants caused a levy to be imposed on two bank accounts "that contained entirely or mostly money earned by, deposited by, and belonging to Robert Kieffer." (Id., ¶ 51.) Alternatively, Plaintiffs argue, if Defendants lacked information about Mrs. Kieffer's actual ownership interest in the Ocean First Bank accounts, they could have instructed the Sheriff to limit the levy upon any joint bank account to Mrs. Kieffer's presumptive equal share of the funds in the accounts. Plaintiffs additionally take issue with Defendants' refusal to release the funds even after they were advised by Robert Kieffer that the funds belonged to him. The Complaint alleges that by causing Mr. Kieffer's funds in the joint accounts to be levied, Defendants engaged in abusive and unfair tactics intended to put pressure on Plaintiffs with regard to satisfaction of the judgment against Diana Kieffer.

Congress enacted the FDCPA "to eliminate abusive debt collection practices." 15 U.S.C. § 1692(e). Persons aggrieved by a debt collector's violation of any one or more of the statutory requirements may seek legal redress pursuant to the private cause of action created by the statute. 15 U.S.C. § 1692k. The Complaint pleads that the attachment of funds belonging to non-debtors in a joint bank account runs afoul of the statute's prohibition of "any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. It also claims that Defendants made misrepresentations in

9

connection with the collection of the debt owed by Mrs. Kieffer, in violation of 15 U.S.C. § 1692e.  Finally, Plaintiffs invoke the FDCPA's catch-all provision barring any "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.

To the extent that Plaintiffs' FDCPA claim is based on the failure to ascertain the Plaintiff-Debtor's actual ownership interest in the joint bank accounts and limit the levy accordingly, their claim cannot prevail as a matter of law. Plaintiffs do not protest that the levy was accomplished in derogation of the procedures established by the New Jersey Court Rules for execution of the default judgment New Century obtained against Diana Kieffer.[4]  See, generally, N.J. Ct. R. 4:59 (setting forth process to enforce judgments).  Instead, they take the position that insufficient pre-levy discovery was taken by Defendants and that, prior to causing the OCSO to levy Plaintiff-Debtor's bank accounts, they should have taken her deposition and/or explored other available discovery methods to ensure that she owned the funds held in any joint account bearing her name.  The result of this failure to investigate, Plaintiffs maintain, is the unconscionable practice of attaching funds that belonged to a non-debtor as a means of collecting the debt owed by the non-debtor's fellow account holder.  Plaintiffs, however, fail to ground their FDCPA claim in any federal or state law that would require the extensive pre-levy discovery they assert was required to tailor their levying instructions in a way that was not unfair and oppressive.

---

[4] Plaintiffs argue in their opposition to Defendants' motion for summary judgment that the collection activity was unfair because Robert Kieffer did not receive notice of the levy placed on his accounts.  Without comment on the validity of this argument, in light of the terms joint account holders agree to pursuant to the operation of the NJMPDAA, N.J.S.A. § 17:16I-8, the Court simply notes that it will not entertain this claim as it was not pled in the Complaint.  See Federico v. Home Depot, 507 F.3d 188, 201-02 (3d Cir. 2007) (holding that amendment of a complaint through briefing submitted on dispositive motions is not permitted).

New Jersey law requires that a judgment creditor deliver a writ of execution to the sheriff with instructions for levying. Borromeo v. DiFlorio, 409 N.J. Super. 124, 136-37 (App. Div. 2009). It is the judgment creditor's responsibility to "conduct discovery to locate and identify the property to be levied upon." Id. at 137. The law places a duty on the creditor to make a good faith effort to ascertain the location of the debtor's personal property, and in this regard, the New Jersey Court Rules make available permissive supplementary procedures authorizing post-judgment discovery to aid the judgment creditor in the execution. See id. (citing N.J. Ct. R. 4:59-1(e)). The law does not, however, require that a creditor exhaust all possible measures to locate a debtor's assets. Id.

The record shows, in fact, that Defendants availed themselves of post-judgment discovery authorized by New Jersey Court Rules, serving Plaintiff-Debtor with an information subpoena pursuant to Rules 4:59-1(e) and 6:7-2(b). The record further shows that by reason of Mrs. Kieffer's failure to disclose the existence of her bank accounts in response to the subpoena's questionnaire, Pressler only learned that she maintained an account at Ocean First Bank based on a check she drew on that account in payment of another collection matter being handled by Pressler. In spite of Plaintiff-Debtor's own failure to respond to post-judgment discovery requests for bank account information, Plaintiffs now argue that Defendants were required to conduct further discovery before initiating the allegedly unfair levy. Plaintiffs cite no legal basis for this purported pre-levy discovery obligation, which would require additional discovery even after the creditor identifies assets held in the name of the debtor. As discussed above, New Jersey law certainly imposes no such requirement, and Plaintiffs cite to no provision of the FDCPA which would require a judgment creditor to go beyond the execution and levy process

11

established by applicable state law.  Indeed, the FDCPA expressly states that, except for inconsistencies between state law and the FDCPA, the statute should not be applied to alter the rights and responsibilities of debt collection practice under state law.  15 U.S.C. § 1692n.  The Court further notes that the extensive discovery urged by Plaintiffs as necessary under the FDCPA would place a creditor at a significant disadvantage in collecting on its judgment, as it would provide the judgment debtor with the opportunity to transfer, hide and otherwise shield assets from attachment.  On this record, no reasonable jury could conclude that Defendants' conduct in causing a levy to be placed on joint accounts, without limiting the levy to the portion of the accounts actually owned by Plaintiff-Debtor, constituted abusive, harassing and/or unconscionable means of collecting a debt.

Plaintiffs' alternate theory of how the subject levy on the Ocean First Bank accounts violated the FDCPA similarly fails to establish a prima facie FDCPA claim as a matter of law.  Plaintiffs, as the Court wrote above, argue that it was unconscionable to place a levy upon the entirety of the joint account to collect the debt owed only by Mrs. Kieffer when, by statute, Defendants could presume that she owned no more than an equal share of the joint accounts she shared with non-debtor Mr. Kieffer.  The impact, if any, of the NJMPDAA's provision regarding presumptive ownership of MPDAs on the legality of judgment execution activity appears to be a matter of first impression.  Plaintiffs cite to no binding authority that discusses the interplay between New Jersey judgment execution procedure, the state law concerning MPDAs and the FDCPA.  The Court, for guidance, has consulted caselaw from other jurisdictions in which state law has adopted a presumption that holders of joint bank accounts share equal ownership or has otherwise regarded ownership of a multiparty account as a joint tenancy.  The cases have focused

on the issue of whether the presumption of equal ownership could be rebutted and, if so, which party bears the burden of rebutting it.  See, generally, Direct Merchants Credit Card Bank v. Greenpoint Bank, No. 36242/02, 2003 WL 2004163, at *2 (Dist Ct. Nassau Co. Mar. 11, 2003); Danielson v. Lazoski, 209 Mich.App. 623, 626 (Ct. App. Mich. 1995); Harvey v. Harvey, 841 P.2d 375, 378 (Colo. Ct. App. 1992); Lewis v. House, 232 Va. 28, 30-31 (1986); Walnut Valley State Bank v. Stovall, 223 Kan. 459, 462 (1978); Musker v. Gil Haskins Auto Leasing, Inc., 18 Ariz. App. 104, 107 (Ct. App. 1972). This case, of course, does not concern allocation of the burden of proof in an execution or garnishment proceeding, that is, after a debtor's joint account has been attached but, more fundamentally, whether the initial restraint of the entire contents of a joint account is proper.  None of the cases the Court consulted from "equal share presumption" jurisdictions held that a judgment creditor was required to limit attachment of a jointly held account to the debtor's presumptive share, and Plaintiffs cite no cases that would restrict levy in the manner Plaintiffs claim is required.  Indeed, it appears that both in jurisdictions which have adopted the presumption and as well as jurisdictions in which ownership of a joint account may be determined solely according to each account holder's net contributions, the view is that while a creditor may ultimately obtain only the portion of the account owned by the debtor, the whole of a joint account may be attached in the first instance.  See, e.g., Savig v. First Nat'l Bank of Omaha, 781 N.W.2d 335, 341 & 346-47 (Minn. 2010) (holding, in a jurisdiction without an equal share presumption of ownership, that a judgment debtor may attach all funds in a joint account to satisfy the debt of a debtor account holder, even though not all of the account holders are judgment debtors, and the burden is on the account holders to prove their respective net contributions to the account); Brown v. Commw. of Ky., 40 S.W.3d 873, 882 (Ky. Ct. App.

1999) (holding, in a jurisdiction without an equal share presumption, that "a party to a joint account may, for attachment and execution purposes, initially be presumed to own the entire joint account.  Upon notice and objection, however, the debtor or any third-party account [holder] may rebut that presumption by proof of separate net contributions."); Denton v. Grumbach, 2 A.D.2d 420, 422 (N.Y. S.Ct. App. Div. 1956) (holding that while presumption of equal share ownership of joint bank account may later be rebutted by proof of other ownership allocation, attachment of the whole account in the first instance is proper).

    Defendants, in moving for summary judgment on the FDCPA claim, have carried their Rule 56(a) burden of indicating to the Court the lack of any legal or factual support for Plaintiffs' claim that the manner in which Defendants levied upon Plaintiffs' joint bank accounts was oppressive, abusive, or otherwise unconscionable.  Plaintiffs, in turn, have failed to persuade the Court that the NJMPDAA's provision establishing an equal share ownership presumption with respect to joint bank accounts has any effect on proper levy and execution procedures under New Jersey law.  It is hornbook law that a presumption is an evidentiary device that discharges the burden of producing evidence as to a fact; it "has the effect of compelling a particular conclusion in the absence of contrary evidence." Shim v. Rutgers, 191 N.J. 374, 386 (2007).  Plaintiffs do not demonstrate that the NJMPDAA's joint account ownership provision amounts to anything more than an allocation of the burden of proof in disputes between account holders and their creditors. See N.J.S.A. § 17:16I-3 (providing that provisions of NJMPDAA regarding ownership relate only to controversies between account holders and their creditors, and do not affect power of withdrawal as determined by account contract).  Plaintiffs, in short, have failed to withstand Defendants' motion for summary judgment with any binding or persuasive authority that the

NJMPDAA's equal share ownership presumption may form the basis of an FDCPA claim against a judgment creditor that fails to limit a levy upon a debtor's joint bank account in conformity with the presumption.

Apart from the initial placement of the levy upon the entirety of the account, the Complaint charges that it was wrongful for Defendants to refuse to release the levy after they were advised, first telephonically by Mr. Kieffer and later through written documentation, that the funds contained in the account were not the property of Mrs. Kieffer.  Once again, Plaintiffs fail to support this argument with any authority that the FDCPA would have required a creditor to take such action outside of the established procedures under New Jersey law for challenging the levy.  Cf. 15 U.S.C. § 1692n. As Defendants point out, the state court rules provide for an expedited process to file and resolve claims objecting to a levy, which requires the court to hold a hearing within seven days after a claim is made.  See Rule 4:59-1(g); see also Rule 6:7-1(c) (making procedures prescribed by Rule 4:59-1(g) applicable to the process for enforcing judgments of the Superior Court's Special Civil Part).  The notice of bank levy, mailed to the Plaintiff-Debtor by the OCSO on the date the Second Writ was served on Ocean First Bank, advised Plaintiff-Debtor of the process.  It stated:

> If the levy is against a bank account, the bank has already been notified to place a hold on your account.  However, the funds will not be taken from your account until the Court so orders.  You may claim your exemption by notifying the Clerk of the Court and the person who ordered this levy of your reasons why your property is exempt.  This claim must be in writing and if it is not mailed within 10 days of services [sic] of this notice, your property is subject to further proceedings for execution.

(Williamson Cert., Ex. I.)  Indeed, following Defendants' voluntary release of $1,000 in levied funds based on the statutory exemption, Plaintiff-Debtor did eventually file papers with the Court

objecting to the levy.  Ultimately, the entire levy was removed by the state court on grounds that the funds belonged to non-debtor Mr. Kieffer.  Plaintiffs cannot now use the FDCPA as a means of essentially modifying the procedure a judgment creditor must follow to execute on a valid state court judgment and, if needed, a judgment debtor must follow to secure the release of inappropriately levied funds.  See, e.g., Beler v. Blatt, Hasenmiller, Leibsker & Moore, LLC, 480 F.3d 470, 474-75 (7th Cir. 2007) (affirming summary judgment on 15 U.S.C. § 1692f claim in favor of debt collector law firm that had levied on debtor's bank account, which included exempt funds, reasoning that state procedures had been followed, state rules provided for prompt post-levy hearing before transfer of any property to creditor and FDCPA's "unfair or unconscionable" language should not be read to allow federal courts to make new rules that change state laws about how state court judgments may be collected).

   Plaintiffs also contend that they are entitled to judgment on their FDCPA claim insofar as it is based on the continuing levy on Plaintiff-Debtor's bank accounts following what they characterize as her settlement of the debt with Pressler.  They argue that the attachment of the second bank account at Ocean First was unconscionable and abusive, in violation of 15 U.S.C. §§ 1692d and 1692f, as it contravened the August 19, 2009 agreement Pressler reached with Plaintiff-Debtor to accept a payment of $30.00 a month in satisfaction of the default judgment.  Plaintiffs also argue that Defendants misrepresented that the debt had been settled, as they failed to release the levy after agreeing to the payment plan.  This misrepresentation, they maintain, violated the FDCPA's provision banning a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  15 U.S.C. § 1692e.

The trouble with Plaintiffs' argument regarding the continuing levy, post-August 19, 2009 agreement is two-fold.  First, Plaintiffs have proffered no evidence that Pressler represented that it would discontinue the levy.  To the contrary, the letter sent by Pressler to Plaintiff to confirm the agreement reached states that the outstanding balance of the judgment debt "will be reduced by the amount of the bank levy once the funds have been turned over to the Plaintiff's attorney [i.e., Pressler]." (Williamson Cert., Ex. O.)  This statement clearly reflects an understanding that the payment plan was not intended to and did not forego New Century's right to execute on its judgment to the extent that the execution had been accomplished through the bank levy.  Indeed, the funds levied, the Court notes, would be insufficient to satisfy the balance of $6,977.76 existing as of the time of the August 19, 2009 agreement, further militating against Plaintiffs' interpretation that the payment plan superseded, rather than supplemented, the levy in place at the time.  Second, the argument appears to be based in part on a characterization of Ocean First Bank's freezing of funds in a second bank account located on August 19, 2009 as a levy separate from the bank levy in place when the payment plan agreement was reached.  Plaintiffs' argument is simply wrong.  Apparently recognizing that the agreement to accept monthly payments in satisfaction of the debt was in fact subject to the bank levy, Plaintiffs maintain that the referenced levy pertains only to the account frozen prior to the agreement.  According to Plaintiffs, Defendants engaged in unconscionable behavior by failing to put a halt to the levy process, which resulted in the freezing of a second account by Ocean First Bank later in the day on August 19, 2009.  The existing bank levy, however, included the account that was belatedly frozen by the bank. "In the case of personalty, the lien of a judgment becomes effective upon the making of a levy by the Sheriff."  Vineland Sav. & Loan Ass'n v. Felmey, 12 N.J.

17

Super. 384, 393 (App. Div. 1950). Moreover, the law has established that once made, the lien "dates back to the delivery of the writ to [the Sheriff]." Id.; see also N.J.S.A. § 2A:17-10 ("No writ of execution shall bind the property or the goods of the person against whom such writ is sued forth, but from the time that such writ shall be delivered to the sheriff, under-sheriff, coroner or other officer, his deputy or agent, to be executed."). The levy upon Plaintiff-Debtor's bank accounts at Ocean First Bank was accomplished by service of the Second Writ by the OCSO on Ocean First Bank on August 17, 2009, and under applicable New Jersey law, dates back to delivery of the Second Writ to the OCSO.[5] The Second Writ, by its terms, pertains to all personal property of the Plaintiff-Debtor, and Pressler's instructions to the OCSO regarding execution as well as the OCSO's Affidavit of Service expressly refer to the one Ocean First Bank account Defendants were able to identify by number and any other accounts associated with Plaintiff-Debtor's social security number. In other words, the levy in effect prior to the August 19, 2009 agreement bound all of Plaintiff-Debtors' bank accounts at Ocean First Bank. The fact that the bank froze certain funds some hours after the payment plan agreement was reached is simply irrelevant. In short, Plaintiffs point to no evidence that would support their claim that Defendants continued to pursue levies in spite of their agreement with Plaintiff-Debtor and thus violated the FDCPA.

    **C.**    **Conversion Claim**

In addition to the FDCPA claim asserted by both Plaintiffs, Mr. Kieffer pleads a claim for "trover/conversion/trespass to chattels" based on the allegedly unlawful exercise of dominion

---

[5] Pressler mailed the Second Writ to the Sheriff under cover of letter dated August 5, 2009.

over Mr. Kieffer's money by Defendants. The Court will refer to this claim simply as a "conversion" claim.

The cause of action for conversion is a state common law theory of relief. The Court has supplemental jurisdiction over this claim pursuant to 28 U.S.C. § 1367 but, in its discretion, declines to exercise it because the Court has dismissed all of the federal claims in this case.[6] See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction . . . [once] the district court has dismissed all claims over which it has original jurisdiction"); City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 172 (1997) (stating that supplemental jurisdiction statute codifies principle "that pendent jurisdiction 'is a doctrine of discretion, not of plaintiff's right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons") (quoting United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966)). The Third Circuit has explained that "once all federal claims have been dropped from a case, the case simply does not belong in federal court." New Rock Asset Partners, L.P. v. Preferred Entity Advancements, 101 F.3d 1492, 1504 (3d Cir. 1996) (quoting Lovell Mfg. v. Export-Import Bank, 843 F.2d 725, 734 (3d Cir. 1988)). This case does not present any circumstances which would make the exercise of the Court's discretion to retain supplemental jurisdiction appropriate. See United Mine Workers, 383 U.S. at 726-27. Upon consideration of concerns of judicial economy, convenience, fairness, and comity, Mellon Univ. v. Cohill, 484 U.S. 343, 357 (1988), the Court finds that because only a state law claim will remain in the case,

---

[6] The Complaint states that this Court's subject matter jurisdiction is grounded in 28 U.S.C. § 1331, based on the existence of a claim arising under federal law. It does not assert that this court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a) or pursuant to 28 U.S.C. § 1332(d), the provision specifically applicable to putative class actions.

this case properly belongs in state court.  Thus, the claim for conversion will be dismissed without prejudice.

### III.  CONCLUSION

For the foregoing reasons, the Court grants Defendants' motion for summary judgment as to the FDCPA claim.  Plaintiffs' cross-motion for summary judgment will be denied in part accordingly.  Moreover, in light of Plaintiffs' expressed wish to discontinue pursuit of the negligent infliction of emotional distress claim, the Court will dismiss it pursuant to Federal Rule of Civil Procedure 41(a)(2).  The remaining claim for conversion will be dismissed without prejudice, pursuant to 28 U.S.C. § 1367(c).

An appropriate form of order will be filed.

  s/Stanley R. Chesler  
STANLEY R. CHESLER  
United States District Judge

Dated: May 21, 2012